UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGEL M. SEDA ,

                Petitioner,              **DECISION AND ORDER**
                                                    **No. 07-CV-6609 (VEB)**

    -vs-

JAMES CONWAY, Superintendent, Attica Corr. Fac.,
Department of Correctional Services,

                Respondent.
_____

**I.      Introduction**

Proceeding *pro se*, Angel Seda ("Seda" or "Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state custody pursuant to a judgment of conviction following a jury trial on charges of burglary in the second degree (N.Y. Penal Law § 140.25[2]) (one count) and attempted burglary in the second degree (N.Y. Penal Law §§ 110.00, 140.25[2]) (one count).  Following a hearing, Seda was sentenced on December 17, 2004, as a persistent felony offender to two consecutive indeterminate terms of imprisonment of 22 years to life.

Petitioner's conviction was unanimously modified on direct appeal December 22, 2006, so that Petitioner's sentences would run concurrently with each other. The conviction was otherwise affirmed. *People v. Seda*, 35 A.D.3d 1162 (App. Div. 4th Dept. 2006). Permission to appeal to the state's highest court was denied on March 5, 2007. *People v. Seda*, 8 N.Y.3d 927 (N.Y. 2007). Petitioner's application for reconsideration was denied on May 25, 2007.

In his Petition for a Writ of Habeas Corpus, Seda challenges the effectiveness of his trial

attorney and his sentencing under New York's discretionary persistent felony offender statute, N.Y. Penal Law § 70.10.

During the pendency of the petition, Seda retained counsel, Norman Effman, Esq. Attorney Effman filed a Reply Memorandum of Law (Docket No. 16) in response to Respondent's Answer and Memorandum of Law in Opposition to the Petition (Docket Nos. 6 & 7). The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).(Docket No. 9).

## II.     Standard of Review under 28 U.S.C. § 2254(d)

When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" federal law as determined by the Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or (b) "the state court considers facts that are materially indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established federal law occurs if (a) " 'the state court identifies the correct governing legal rules from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' " or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal

principle to a new context where it should not apply, or fails to extend it where it should apply." *Williams*, 529 U.S. at 407.

**III.     Analysis of Petitioner's Habeas Claims**

   **A.     Ground One: "Ineffective Assistance of Trial Counsel"**

      **1.     Overview of the *Strickland* Standard**

In order to prevail on a Sixth Amendment ineffectiveness claim, a defendant must prove (1) that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. In *Strickland*, the Supreme Court said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Thus, a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *accord, e.g.*, *Bell v. Cone*, 535 U.S. at 698.  A divided Second Circuit panel recently reiterated that court's previous holding that application of the New York state standard, *e.g.*, *People v. Baldi*,  54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981), is not "contrary to," 28 U.S.C. § 2254(d)(1), the principles set forth in *Strickland*, which has been deemed to be the "clearly established" Supreme Court law for evaluating claims of ineffective assistance of trial counsel. *Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir. 2010) ("*Rosario I*") ("We emphasize again that the New York state

standard for ineffective assistance of counsel is not contrary to *Strickland*.") (citing *Eze v. Senkowski*, 321 F.3d 110, 123-24 (2d Cir. 2003); *contrasting with Henry v. Poole*, 409 F.3d 48, 70 (2d Cir. 2005) (recognizing that "in the absence of a contrary decision by this Court *en banc*, or an intervening Supreme Court decision, we are bound to follow the precedents . . . that the N[ew]Y[ork] Court of Appeals standard is not 'contrary to' *Strickland*")).

With relief under the "contrary to" clause not available to Seda under these circumstances, given the Second Circuit's most recent pronouncement in the *Rosario* cases, the remaining issue, then, is whether Petitioner can obtain relief on the ground that the state court's adjudication of his claim involved an "unreasonable application" of *Strickland*. The Second Circuit has stated that the level of "unreasonableness" that must be shown under 28 U.S.C. § 2254(d)(1) "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008) 8 (quoting *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir.2002)). As the Circuit further explained in *Eze v. Senkowski*, 321 F.3d at 121, an unreasonable application of Supreme Court precedent means more than that the state court incorrectly applied the precedent; it had to apply the facts in an "objectively unreasonable manner." *Id.* There must be "some increment beyond error is required," although it "need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (internal citations omitted).

      **2.**      **Analysis of Trial Counsel's Alleged Errors**

         **a.**      **Failure to Request a Suppression Hearing**

Petitioner's prior attorney had already filed an omnibus motion to which the prosecutor had responded. Accordingly, the defense had been afforded discovery and a bill of particulars.

After reviewing those documents, trial counsel reasonably decided not to pursue the motion for a suppression hearing because the prosecution was not offering any physical evidence or statements by Seda obtained as a result of his arrest. In any event, Petitioner has not demonstrated that there was substantial merit to a suppression motion: Petitioner was not arrested in his apartment, but in a common area–a stairwell. There was no indication he had any expectation of privacy in the stairwell. Given the lack of merit to the motion, the Court cannot say that trial counsel was unreasonable in not filing it. *See United States v. Nersesian*, 824 F.2d at 1322 ("[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation.") (citing *United States v. Afflerbach,* 754 F.2d 866, 870 (10th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985)). Furthermore, Petitioner was not prejudiced by trial counsel's failure to file a motion that had little to no chance of success.

### b.     Failure to Move for Severance

Seda argues that trial counsel was ineffective in failing to move for severance of the indictment. Under New York State law, severance of charges that are properly joinable as the same or similar in law, C.P.L. 200.20(2)(c), may be ordered in the discretion of the trial judge. However, Seda has not demonstrated that the circumstances warranted severance under New York State law since there were not differing levels of proof for the two burglaries or a substantial likelihood that the jury would be unable to consider separately the proof as it related to each offense. In addition, there was no indication that Seda had important testimony to give on one count, and a genuine need to refrain from testifying on the other or that there was a substantial risk of prejudice. N. Y. Crim. Proc. Law § 200.20(3); *People v. Oliveira*, 2 A.D.3d

122 (App. Div. 1st Dept. 2003) ("The court properly exercised its discretion in denying defendant's motion, made pursuant to CPL 200.20 (3), for a severance of counts relating to offenses that had been properly joined as "the same or similar in law". The evidence as to the two incidents was capable of being easily segregated by the jury. There was no significant variance in the quantity of proof; on the contrary, the evidence of guilt as to both incidents was overwhelming. Defendant's assertion of a need to testify as to one incident but not the other was unconvincing, particularly since his proposed testimony would have opened the door to evidence of the crimes charged in the second incident.") (internal citations omitted). As Respondent points out, there is authority under New York State law for the proposition that trial counsel reasonably could have decided that, under the circumstances, the potential for the imposition of concurrent, rather than consecutive, sentences was greater in the case of a joint trial and that such a consideration is properly taken into account in deciding not to move for severance. *See*, *People v. Doze*, 151 A.D.2d 997 (N.Y. App. Div. 1989) ("Defendant's claim that he was denied the effective assistance of counsel is based solely on the fact that his trial attorney failed to make a pretrial motion for a severance. Assuming, *arguendo*, that such application might have been successful we believe that counsel's election not to do so was part of a plausible trial strategy. By trying the charges against each victim jointly, defense counsel was able to present consistent and strongly supportive testimony of the woman with whom he was living as well as that of her two daughters. Additionally, counsel may have considered that the potential for imposition of concurrent sentences was greater in the case of a joint trial.") (internal citations omitted).

Given the lack of merit to the motion, the Court cannot say that trial counsel was unreasonable in not filing it. *See United States v. Nersesian*, 824 F.2d at 1322 ("[F]or purposes of

effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation.") (citation omitted). Furthermore, Petitioner was not prejudiced by trial counsel's failure to file a motion that had little to no chance of success.

### 3. Failure to Challenge the Prosecutor's Use of a Peremptory Strike

Seda asserts that trial counsel was ineffective in failing to move to challenge the prosecutor's peremptory strike of juror as improperly race-based under *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). However, Seda has not set forth persuasive facts indicating there was a *prima facie* case of racial discrimination. Thus, Seda has not demonstrated that trial counsel was objectively unreasonable in declining to make such a motion.

Even if a *prima facie* case could have been established, the prosecutor nevertheless offered a credible race-neutral reason for excusing the juror, since the juror's husband had been prosecuted by the Erie County District Attorney's office and was still imprisoned. (108, 114-115). The Second Circuit has held that race- or gender-neutral explanations based on the fact that a relative of a prospective juror had been arrested or convicted of a crime are acceptable under *Batson*. *See Green v. Travis*, 414 F.3d at 300-01 (2d Cir.2005) (accepting as a satisfactory race-neutral reason for peremptory strike the prosecutor's explanation that the prospective jurors had relatives who had been convicted of drug offenses; stating that such a reason "relied on the types of evidence that this Court has approved in support of establishing the racial neutrality of a peremptory challenge"); *Jordan v. Lefevre*, 293 F.3d 587, 594 (2d Cir.2002) ("Nor do we see error in the district court's finding that [the prosecutor's] exercise of five of the State's peremptory challenges against blacks was not motivated by their race. [The prosecutor] offered race-neutral reasons for each of those challenges. It was not impermissible for the district court to credit his

explanations that he viewed [one juror] as potentially having animosity toward the police because of [that juror]'s view that the police had unfairly arrested and beaten his brother[.]").

Again, in light of the lack of merit to the motion, the Court cannot say that trial counsel was unreasonable in not filing it. *See United States v. Nersesian*, 824 F.2d at 1322 ("[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation.") (citation omitted). Furthermore, Petitioner was not prejudiced by trial counsel's failure to file a motion that had little to no chance of success.

### 4.     Failure to Give an Opening Statement

Petitioner claims that he received ineffective assistance of counsel due to counsel's failure to make an opening statement. The decision whether or not to give an opening statement is strategic in nature. *See*, *e.g.*, *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.) ("[T]he decision whether to make an opening statement and when to make it is ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel. . . . By waiving opening argument the defense did not commit itself to a particular position and was thus free to develop any defense that might materialize as the prosecution presented its case."), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *see also United States v. Salovitz*, 701 F.2d 17, 20-21 (2d Cir.1983) ("It is common knowledge that defense counsel quite often waive openings as a simple matter of trial strategy.") (citations omitted). Seda has not demonstrated that trial counsel's strategic decision to waive the opening statement amounted to constitutionally deficient performance. *Accord*, *e.g.*, *Boyd v. hawk*, 965 F. Supp. 443 (S.D.N.Y. 1997) (dismissing habeas claim that trial counsel was ineffective in failing to give an opening statement because the decision could "be attributed to

counsel's trial tactics").

### 5.     Erroneous Elicitation of Testimony

Petitioner challenges defense counsel's questioning of prosecution witness Ramon Gonzalez regarding his failure to immediately identify petitioner to the police, which elicited testimony about the prior attempted burglaries (230-231). He elicited from that Gonzalez used crack cocaine and was upset with Seda. Counsel questioned whether the door was damaged, and elicited that Petitioner did not have a hammer or pipe which could provide needed leverage to open the door. Counsel also brought out that the witness did not give Petitioner's name to the police when he called 911. (224- 228, 230-231). With respect to witness Nancy Berry Laporta, defense counsel brought out the fact that she could not say for certain that the bottles recovered by the police were the same ones in her refrigerator. (252.) Similarly, defense counsel elicited from witness Donna Berry that she had no specific way of identifying the bottle. (272.). As Respondent argues, Gonzalez's testimony about other burglaries could have been part of a general challenge to his credibility because the witness did not report the prior burglaries or identify Petitioner as the perpetrator. Counsel could have used these facts and the witness's criminal history to argue that his entire testimony was not credible. Petitioner here has failed to show that defense counsel's inquiry was not part of a valid trial strategy, and therefore he cannot fulfill the deficient performance prong of *Strickland.*

### 6.     Deficient Cross-Examination of Prosecution Witnesses

Petitioner faults defense counsel's cross-examination of the forensic serologist as being superficial. However, "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." *United States v. Nersesian*, 824 F.2d

1294, 1322 (2d Cir. 1987).  As such, counsel's conduct of cross-examination generally will not be second-guessed by reviewing courts. Furthermore, Petitioner has not demonstrated that trial counsel's cross-examination was deficient or could have been more productive for the defense. As Respondent points out, trial counsel elicited from the serologist that twins could have the same DNA. The serologist admitted not running a specific test for saliva despite having the capability of doing so. (402-405). Although Petitioner claims that counsel should have asked questions about the conditions of the bottles, in the absence of some proof that favorable testimony for the defense would have been elicited by such questioning, there is no basis on which to find prejudice. According to the expert, if fingerprint powder or some other factor affected the quality of the DNA, it mean that he would have had only a partial sample and could only have obtained a partial profile. The expert did not indicate that such external factors would change the DNA profile itself. (384-386).

With respect to the remaining witnesses, trial counsel cannot be faulted for not cross-examining them when there is no indication that any favorable defense proof could be adduced.

### 7.     Erroneous Decision to Play the Tape of the 911 Call

Petitioner has not demonstrated that defense counsel's decision to play the 911 tape was anything other than a matter of strategy which should not be second-guessed on habeas review. During his summation, trial counsel specifically referred to the witnesses' statements on the 911 tape, and thus it was not unreasonable for trial counsel to have played the tape of the 911 call so that the jury would hear the witnesses' exact words. (414-415).

### 8.     Deficient Summation

"The right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 701-702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Herring v. New York*, 422 U.S. 853, 865, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975)). "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." 540 U.S. at 5-6. The Supreme Court has explained that summations should "sharpen and clarify the issues for resolution by the trier of fact," 535 U.S. at 862, "but which issues to sharpen and how best to clarify them are questions with many reasonable answers[,]" 540 U.S. at 6.

Here, counsel's summation reviewed the evidence and coherently detailed the weaknesses in the prosecution's case against Seda. Trial counsel appropriately noted that the only proof of the Petitioner's guilt was DNA on a juice bottle that was found in the apartment building, and questioned whether a burglar would leave a juice bottle given the otherwise professional manner in which the burglary was committed. Trial counsel pointed out that unlike a fingerprint or DNA found on a piece of furniture in the apartment, a juice bottle was too portable and fungible to lead one to the conclusion that Petitioner was the burglar. Trial counsel also noted that the victim could not positively identify the bottles. (411-414). With respect to the attempted burglary, trial counsel questioned the prosecution witness's credibility, the lack of damage to the door through which the burglar entered, and the impossibility of a successful entry through the door using just a screwdriver. (414-416). Trial counsel's summation confronting the evidence and his attempts to attack the case against his client did not amount to ineffective assistance,

   9.    **Failure to Challenge the Constitutionality of Predicate Felony**

**Convictions**

Petitioner asserts that "the trial record clearly demonstrates trial counsel's lack of knowledge with New York's persistent felony offender statute" because trial counsel made "no challenge to the prior felony convictions and no arguments with respect to whether or not those convictions were constitutionally obtained." Pet'r Reply Mem. at 5 (Docket No. 16). Notably, Petitioner has not explained the legal or factual bases on which trial counsel should have challenged the constitutionality of the prior felony convictions. This is fatal to a showing that he was prejudiced by trial counsel's decision in this regard.

As Petitioner concedes, trial counsel did challenge the constitutionality of the persistent felony offender statute and sentencing procedure. Trial counsel opposed a finding that Seda should be sentenced as a felony offender, arguing that Seda had only one prior violent felony, that the other prior felonies were of lower levels, and that there was no indication that Petitioner had used weapons or inflicted injuries on innocent victims in the past. Trial counsel also argued that rehabilitation and treatment rather extended incarceration was more appropiate given Petitioner's drug and alcohol addictions. Petitioner has not established the existence of other mitigating factors which should have been brought to the sentencing court's attention.

**10.    Summary**

In sum, this Court finds that none of trial counsel's alleged errors or omissions, taken singly or cumulatively, were objectively unreasonable in light of prevailing professional standards of practice. Moreover, this Court remains unconvinced that even if trial counsel had performed as Seda wishes, there is a reasonable probability of a more favorable outcome, either at trial or during the sentencing proceedings. Because Seda cannot fulfill both prongs of the

*Strickland* test, his ineffective assistance claim fails on the merits.

> **B.      Ground Two: Unconstitutionality of Petitioner's Sentence Under New York's Persistent Felony Offender Statute Because It Violated Petitioner's Sixth Amendment Right to a Jury Trial**

Seda was sentenced under New York's "discretionary" persistent felony offender statute, N.Y. Penal Law § 70. 10, which he asserts is unconstitutional under the Sixth Amendment as explicated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny.

In April 2010, in a consolidated appeal of five § 2254 petitions, a panel of the Second Circuit concluded that New York's persistent felony offender sentencing scheme violated the Sixth Amendment, and that the New York courts unreasonably applied clearly established Supreme Court precedent in holding otherwise, but remanded the matters to the district court for consideration of whether those errors were harmless. *See Besser v. Walsh*, 601 F.3d 163, 189 (2d Cir.2010). A majority of judges in active service then called for the matter to be reheard en banc. In a 7-3 decision, the Second Circuit held several months later in *Portalatin v. Graham*, 624 F.3d 69, 73 (2d Cir.2010), that the state courts did not engage in an unreasonable application of clearly established Supreme Court precedent in holding in, *e.g.*, *People v. Rivera*, 5 N.Y.3d 61, 800 N.Y.S.2d 51, 833 N.E.2d 194 (2005), *cert. denied*, 546 U.S. 984, 126 S.Ct. 564, 163 L.Ed.2d 473 (2005), that N.Y. Penal Law § 70.10 does not run afoul of the Sixth Amendment. *Portalatin*, 624 F.3d at 90-94. *Besser*, which had held otherwise, accordingly was vacated *by Portalatin*. Based upon the authority of *Portalatin v. Graham*, 624 F.3d 69, Seda's *Apprendi* claim attacking his sentencing as a persistent felony offender under N.Y. Penal Law § 70.10 must be denied.

### C. Ground Three: Harshness and Excessiveness of the Sentence

On direct appeal Petitioner argued that the Appellate Division should exercise its discretionary authority to modify his sentences on the basis that they were harsh and excessive. The Appellate Division agreed that the imposition of consecutive terms of imprisonment renders the sentence unduly harsh and severe and therefore, as a matter of discretion in the interest of justice, it modified the judgment by directing that the terms of imprisonment would run concurrently. The Appellate Division did not reduce the individual length of the sentences.

Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Because the sentences imposed were within the range prescribed by state law, this claim does not present a question of constitutional dimension and therefore it is not subject to habeas review. *See White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992)* ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.1989)). Therefore, it must be dismissed.

### IV. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Hon Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: March 7, 2011
Rochester, New York